# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
Lisa Nelson

### DEFENDANTS
United States of America, C.O. Lamont Lucas, Lauren Colling, Mr. Bunting, Timothy Kavelak, Lt. Letitia Parish, Michael Scott Lewis

**(b)** County of Residence of First Listed Plaintiff  Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Su Ming Yeh, Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S, Philadelphia, PA 19106; 215-925-2966

William J. Fox, Law Offices of William J. Fox, P.C.
1528 Walnut Street, Suite 515, Philadelphia, PA 19102; (215) 546-2477

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|                                     | PTF | DEF |                                                          | PTF | DEF |
|-------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State               | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State            | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                       | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment / ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other / **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | | | |
| | / ☒ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Tort Claims Act; and Bivens action for violations of the 8th Amendment

Brief description of cause:
sexual abuse of a prisoner

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

MAR 14 2014

DATE
03/14/2014

SIGNATURE OF ATTORNEY OF RECORD
/s/ Su Ming Yeh

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
   (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
   (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
   United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
   Original Proceedings. (1) Cases which originate in the United States district courts.
   Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
   Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
   Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
   Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _Philadelphia, PA_

Address of Defendant: _Philadelphia, PA_

Place of Accident, Incident or Transaction: _Federal Detention Center Philadelphia in Philadelphia, PA_
(Use Reverse Side For Additional Space)

14 1551

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☒

Does this case involve multidistrict litigation possibilities? _No_ Yes☐ No☐

RELATED CASE, IF ANY:
Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. Federal Question Cases:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) _Federal Tort Claims Act_

B. Diversity Jurisdiction Cases:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

**ARBITRATION CERTIFICATION**
(Check Appropriate Category)

I, _Su Ming Yeh_, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _3/14/14_   _Su Ming Yeh_   _95111_
Attorney-at-Law   Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

MAR 14 2014

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _3/14/14_   _Su Ming Yeh_   _95111_
Attorney-at-Law   Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |
|---|---|
| v. | CIVIL ACTION |
|  | NO. 14 1551 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (✓)

| 3/14/14 | Su Ming YEH | Lisa Nelson |
|---|---|---|
| Date | Attorney-at-law | Attorney for |
| 215-925-2966 | 215-925-5337 | smyeh@pailp.org |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

MAR 14 2014

#400

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA NELSON, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| vs. | : | **14   1551** |
| UNITED STATES OF AMERICA,<br>C.O. LAMONT LUCAS, LAUREN COLLINS,<br>MR. BUNTING, TIMOTHY KAVELAK,<br>LT. LETITIA PARISH,<br>MICHAEL SCOTT LEWIS, | : | |
| Defendants, | : | |

## COMPLAINT

### INTRODUCTION

Plaintiff Lisa Nelson brings this Federal Torts Claims Act action against the United States of America, seeking compensation for injuries she suffered as a result of the intentional tort and negligence of employees of the Federal Detention Center Philadelphia ("Federal Detention Center") in Philadelphia, Pennsylvania for the sexual abuse she experienced from Defendant Lamont Lucas. Ms. Nelson also brings a federal constitutional claim pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) for violations of her Eighth Amendment rights to be housed safely and free of sexual abuse, and the failure of Defendants to protect her from such abuse.

### JURISDICTION

1. This Court has federal jurisdiction pursuant to 28 U.S.C. §§1331 and 1343; 42 U.S.C. §§1983 and 1988; and the Eighth Amendment of the United States Constitution.

1

2. This Court has jurisdiction pursuant to the Federal Torts Claims Act, 28 U.S.C. §1346 and 28 U.S.C. §2671, et seq.

3. Venue is proper in the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1402(b) because the events giving rise to this action occurred in Philadelphia, Pennsylvania, within the Eastern District of Pennsylvania.

## PARTIES

4. Plaintiff, Lisa Nelson, was an inmate at the Federal Detention Center Philadelphia in Philadelphia, Pennsylvania, at all times relevant to the events described in this complaint. She has since been released from custody and currently resides in Philadelphia, Pennsylvania.

5. Defendant United States of America is an appropriate defendant under the Federal Tort Claims Act.

6. Defendant Lamont Lucas was at all times relevant to this complaint an employee of the United States Bureau of Prisons as a corrections officer at the Federal Detention Center and is sued in his individual capacity.

7. Defendant Lauren Collins was at all times relevant to this complaint an employee of the United States Bureau of Prisons as a facilities assistant at the Federal Detention Center and is sued in her individual capacity.

8. Defendant Bunting was at all times relevant to this complaint an employee of the United States Bureau of Prisons and is sued in his individual capacity.

9. Defendant Timothy Kavelak was at all times relevant to this complaint was an employee of the United States Bureau of Prisons and is sued in his individual capacity.

2

10. Defendant Lt. Letitia Parish was at all times relevant to this complaint an employee of the United States Bureau of Prisons as a corrections officer at the Federal Detention Center and is sued in her individual capacity.

11. Defendant Michael Scott Lewis was at all times relevant to this complaint an employee of the United States Bureau of Prisons as a corrections officer at the Federal Detention Center and is sued in his individual capacity.

**FACTS**

12. From December 2011 to May 2012, Plaintiff Lisa Nelson was incarcerated at the Federal Detention Center Philadelphia ("Federal Detention Center").

13. The Federal Detention Center is an administrative security federal detention center, which houses individuals awaiting trial as well as some inmates serving their sentences.

14. Soon after Ms. Nelson's arrival to the Federal Detention Center, she was assigned to the "cadre" unit.

15. The "cadre" unit is a group of inmates designated by the Bureau of Prisons to perform various prison work projects.

16. Ms. Nelson was initially assigned to the general maintenance work unit.

17. Defendant Bunting was responsible for giving assignments to the inmate workers.

18. When Defendant Bunting asked Ms. Nelson what work she could do, Ms. Nelson responded that she could do clerical work.

19. Defendant Lucas overheard this conversation and asked to speak to Ms. Nelson.

20. Defendant Lucas supervised the tool room, which houses tools used by inmates to conduct their work duties.

3

21. Defendant Lucas informed Ms. Nelson that he would hire her as a clerk in the tool room.

22. Ms. Nelson was hired to be a full-time tool room clerk.

23. Ms. Nelson later learned that prior to her arrival there had not been a full-time clerk in the tool room.

24. All tools must be checked out and returned by the inmates at the end of a designated time period.

25. Typically, Ms. Nelson and Defendant Lucas would distribute the tools to the inmates in the morning before works crews would perform their maintenance jobs.

26. Defendant Lucas was a well-established and well-respected individual at the Federal Detention Center.

27. Soon after Ms. Nelson started her job in January 2012, while Defendant Lucas was showing her the tools in the aisle, he tried to kiss Ms. Nelson while they were in the tool room

28. Ms. Nelson pushed Defendant Lucas away.

29. Ms. Nelson was upset that Defendant Lucas tried to kiss her.

30. Ms. Nelson later informed Defendant Lucas that she felt uncomfortable about what happened.

31. Defendant Lucas was injured and missed approximately one month of work shortly after Ms. Nelson started, returning to work in February 2012.

32. Defendant Lucas was injured and missed one month of work around January 2012, returning to work in February 2012.

4

33. When Defendant Lucas returned to work, he began to "groom" Ms. Nelson to become more comfortable with him.

34. Defendant Lucas brought Ms. Nelson food from outside the institution that Ms. Nelson otherwise had no access to and was not permitted to have or eat.

35. Defendant Lucas brought Ms. Nelson other items from outside the institution that Ms. Nelson otherwise had no access to and was not permitted to have, such as lotion and toothbrushes.

36. Defendant Lucas engaged Ms. Nelson in conversations about their personal lives.

37. Defendant Lucas permitted Ms. Nelson to use the computer to browse the Internet for online shopping.

38. Defendant Lucas mailed letters out for Ms. Nelson directly to Ms. Nelson's mother, Cecilia Bryant, so that the letter did not go through the regular prison mail system.

39. Defendant Lucas also brought Ms. Nelson around with him on rounds at the Federal Detention Center, including to the housing units which housed the male inmates.

40. Defendant Lucas also permitted Ms. Nelson to stay in the tool room unaccompanied while he was not in the tool room rather than directing her to sit on the bench in the hallway, which is where inmates typically waited while not working.

41. Defendant Lucas gave Ms. Nelson compliments, telling her that she was pretty and that he liked how she looked.

42. Eventually, Defendant Lucas attempted to kiss Ms. Nelson again, and she did not push him away.

43. Defendant Lucas began asking Ms. Nelson for a kiss as a morning greeting.

5

44. The kisses evolved from pecks to French kissing, and then developed into fondling and then ultimately to sex.

45. The tool room has an "A" room and a "B" room.

46. The "A" room is towards the back of the tool room and is not visible from the doorway.

47. Inmates were not permitted to go to the "A" room because it housed tools that posed a greater security risk.

48. Defendant Lucas would find assignments that took Ms. Nelson and him to the "A" room.

49. The first couple of times that Defendant Lucas initiated sex with Ms. Nelson, they were interrupted.

50. The time after that, Defendant Lucas and Ms. Nelson had oral sex instead.

51. Around Defendant Lucas's birthday in April 2012, Defendant Lucas wanted to have vaginal sex.

52. Defendant Lucas and Ms. Nelson subsequently had vaginal sex several times.

53. The sexual activity continued several times a week until May 2012.

54. During the sexual abuse, Ms. Nelson felt violated and incredibly conflicted, continually experiencing fear, anxiety, discomfort, and depression.

55. Ms. Nelson felt nasty, had trouble sleeping, and cried at night through the duration of the sexual abuse.

56. Pursuant to Bureau of Prisons Program Statement 3420.09, prison employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates, and may not engage in sexual behavior with an inmate.

57. Pursuant to Bureau of Prisons Program Statement 3420.09, an employee may not engage in, or allow another person to engage in, sexual behavior with an inmate, and that there is never such thing as *consensual* sex between staff and inmates.

58. Pursuant to Bureau of Prisons Program Statement 5324.06, prison employees in the Bureau of Prisons have a duty to notify a designated prison official if an incident of sexual abuse is suspected.

59. Pursuant to Bureau of Prisons Program Statement 3420.09, prison employees must report to management any violation or attempted violation of unprofessional contacts with inmates.

60. Defendant Bunting had an office directly across from the tool room where Defendant Lucas worked and saw Ms. Nelson every day.

61. If Defendant Lucas was out sick, Defendant Bunting would ask Ms. Nelson questions about when Defendant Lucas would return, even though Ms. Nelson was an inmate and should not have access to that information.

62. Defendant Bunting would often poke his head into the tool room and ask questions like, "Are you behaving yourselves?" to both Ms. Nelson and Defendant Lucas.

63. Defendant Lauren Collins was a Facilities Assistant at the Federal Detention Center, and supervised the inmates on work details.

64. Most inmates must sit on a bench in the hallway while not working, but Ms. Collins frequently observed that Ms. Nelson was not sitting on the bench when she had no active duties.

65. Defendant Collins frequently observed Ms. Nelson sitting in the tool room office reading magazines and talking to Defendant Lucas or sitting in the tool room by herself.

7

66. Defendant Collins frequently heard loud music coming from the tool room.

67. Around Defendant Lucas's birthday, Ms. Nelson asked Defendant Collins a question about doing something for Defendant Lucas's birthday.

68. Defendant Collins asked Ms. Nelson how she knew Defendant Lucas's birthday since inmates are not permitted to know personal information about prison officials.

69. Defendant Collins felt uncomfortable when inmates and staff members were too comfortable, such as Ms. Nelson and Defendant Lucas.

70. Defendant Collins expressed her concerns to Defendant Lucas, but otherwise took no further action and did nothing to report Ms. Nelson and Defendant Lucas to other prison officials or staff.

71. Defendant Timothy Kavelak was a facilities manager at the Federal Detention Center.

72. Defendant Kavelak supervised Defendant Bunting, who directly oversaw the prison workwshops, and assigned job positions for the inmates.

73. Defendant Kavelak observed Ms. Nelson spending time in the tool room not working.

74. Defendant Kavelak observed Ms. Nelson reading in the tool room, and heard loud music emerging from the tool room.

75. Defendant Kavelak expressed his concerns to Defendant Lucas and Defendant Collins.

76. Nevertheless, Defendant Kavelak took no further action and did nothing to report Ms. Nelson and Defendant Lucas to other prison officials or staff.

77. Defendant Lewis supervised Defendant Lucas.

78. When Defendant Lewis learned that Ms. Nelson was working in the tool room, he asked when Defendant Lucas had hired a clerk.

79. Defendant Lewis expressed concern that Ms. Nelson was in the tool room.

80. When Defendant Lieutenant Letitia Parish was conducting rounds in the subbasement area where the tool room was located, she observed Ms. Nelson in the tool room.

81. Defendant Parish was concerned that something was wrong with the situation with Ms. Nelson.

82. Defendant Parish expressed her concerns to some other prison staff, but otherwise took no further action and did nothing to report Ms. Nelson and Defendant Lucas.

83. In approximately May 2012, Ms. Nelson was informed of a date when she would be released.

84. Ms. Nelson was assigned to a halfway house.

85. Defendant Lucas informed Ms. Nelson that he wanted to continue seeing her.

86. Defendant Lucas informed Ms. Nelson that he wanted to give her a gift.

87. While Ms. Nelson was in the tool room, she selected a pair of earrings from the Internet.

88. Ms. Nelson did not think that Defendant Lucas would buy the earrings for her.

89. On May 16, 2012, the day before Ms. Nelson's release, Defendant Lucas informed her that he had to leave the institution because he had left his wallet at home.

90. Defendant Lucas did leave the Federal Detention Center, went home for his wallet, and proceeded to Tiffany's.

91. At Tiffany's, Defendant Lucas purchased a pair of earrings for $150.00 (plus tax).

92. Defendant Lucas brought the earrings into the Federal Detention Center.

9

93. Defendant Lucas gave the earrings to Ms. Nelson.

94. Ms. Nelson wore the earrings back to her cell.

95. Later, another inmate saw the earrings and told one of the corrections officers.

96. Corrections Officer Joseph Farrow asked Ms. Nelson about the earrings and confiscated them.

97. Ms. Nelson later reported to Corrections Officer Eric Harris that Defendant Lucas had sex with her.

98. An internal investigation was triggered.

99. During the internal investigation, which was led by James Gibbs, the investigators found print-outs from the Internet relating to online shopping, and letters and notes that Ms. Nelson had written to Defendant Lucas.

100. One letter was found taped in Defendant Lucas's locker to which only Defendant Lucas had the key.

101. One note was written on a paper in the shape of two hearts, where Ms. Nelson wrote the numbers: "143" and "154."

102. The number "143" is common slang in popular culture and the Internet for "I love you."

103. The number "143" corresponds to the number of letters in each word in the phrase "I love you," (i.e. "I" has one (1) letter, "love" has four (4) letters, and "you" has three (3) letters).

104. Defendant Lucas came up with the number "154" for "I wanna fuck."

105. These numbers were also written on Defendant Lucas's desk calendar.

106. Investigators learned that Ms. Nelson knew other personal information about Defendant Lucas that she was not supposed to know, such as his cell phone number, his nickname, the existence of a tattoo, the existence of a burn on Defendant Lucas's leg, and information about Defendant Lucas's family.

107. Investigators discovered that Defendant Lucas permitted Ms. Nelson to browse the Macy's website, select clothes and write down the item or web identification number, write to Ms. Nelson's mother with the identification number, so that Ms. Nelson's mother could ship the items to Ms. Nelson for Ms. Nelson to wear on her release.

108. On May 17, 2012, Ms. Nelson was transferred to the Metropolitan Correctional Facility in Brooklyn, New York.

109. To the best of Ms. Nelson's knowledge, Defendant Lucas was disciplined and fired for his actions.

110. Prison staff at the Federal Detention Center Philadelphia have a responsibility to protect all inmates in their custody and keep them safe from violence, including Ms. Nelson.

111. The Federal Detention Center staff and corrections officers were at all times relevant to this Complaint employed by the Bureau of Prisons.

112. At all times relevant to this Complaint, the Federal Detention Center staff and corrections officers were acting within the scope and course of their employment with the Bureau of Prisons.

113. As a direct and proximate result of the conduct of the Federal Detention Center staff and corrections officers, plaintiff suffered substantial damages, including pain and suffering, physical impairment, emotional distress, and harm.

114. Ms. Nelson suffers from permanent and ongoing psychological damage, requiring regular psychotherapy and counseling for over 9 months.

115. Ms. Nelson satisfied all available administrative remedies under the FTCA.

116. Defendants Lucas, Collins, Bunting, Kavelak, Lewis, and Parish are state actors.

## CAUSES OF ACTION

### Count I

**Federal Tort Claims Act – Intentional Tort, Assault and Battery**
**Plaintiff v. Defendant United States of America**

117. Plaintiff incorporates by reference paragraphs 1-113, as if fully set forth in this paragraph.

118. The intentional acts by an employee of Defendant United States of America caused Ms. Nelson to be in fear of imminent non-consensual physical touching, and did result in intentional, non-consensual, harmful, and offensive touching by another person, constituting assault and battery.

### Count II

**Federal Tort Claims Act – Negligence**
**Plaintiff v. Defendant United States of America**

119. Plaintiff incorporates by reference paragraphs 1-113, as if fully set forth in this paragraph.

120. The staff at the Federal Detention Center Philadelphia owed a duty to Ms. Nelson, breached their duty to her, and this breach of duty was a direct and proximate cause and a substantial factor in bringing about Ms. Nelson's damages outlined above.

121. The actions of the staff at the Federal Detention Center Philadelphia constitute the tort of negligence under the laws of the Commonwealth of Pennsylvania.

122. Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

## Count III

### Eighth Amendment of the United States Constitution – Excessive Force
### Plaintiff v. Defendant Lucas

123. Plaintiff incorporates by reference paragraphs 1-113, as if fully set forth in this paragraph.

124. The utilization of excessive force by Defendant Lucas in a malicious and sadistic manner to cause harm without justification against Plaintiff constitutes cruel and unusual punishment under the Eighth Amendment.

## Count IV

### Eighth Amendment of the United States Constitution – Failure to Protect
### Plaintiff v. Defendants Collins, Kavelak, Bunting, Lewis, and Parish

125. Plaintiff incorporates by reference paragraphs 1-113, as if fully set forth in this paragraph.

126. Defendants' acts, failures to act, refusals to act, and/or deliberate indifference to Plaintiff's health and safety inflicted cruel and unusual punishment upon Plaintiff within the meaning of the Eighth Amendment to the U.S. Constitution.

## RELIEF SOUGHT

Wherefore, Plaintiff Lisa Nelson respectfully requests the following relief:

1. Compensatory damages from all defendants;

2. Punitive damages from Defendants Lucas, Collins, Bunting, Kavelak, Parish and Lewis;

3. Declaratory relief that the actions of the defendants are unconstitutional;

4. Reasonable attorneys fees and costs; and

5. Any other relief the court deems necessary.

Respectfully submitted,

/s/ Su Ming Yeh
Su Ming Yeh
Attorney PA ID# 95111
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106
T: 215-925-2966

/s/ William Fox
William Fox
Attorney PA ID# 69898
Law Offices of William J. Fox, P.C.
1528 Walnut Street, Suite 515
Philadelphia, PA  19102
(215) 546-2477

Date: March 14, 2014                    Attorneys for Plaintiff

## **VERIFICATION**

I verify that the statements in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

_3/12/14_
DATE

_Lisa Nelson_ (signature)
Lisa Nelson